IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KADEER KHANDAN, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-1697 (RBW) |
| GEORGE W. BUSH,<br>President of the United States,<br>*et al.,* | ) ) ) ) ) | |
| Respondents. | ) ) | |

**RESPONDENTS' REPLY IN SUPPORT OF MOTION FOR ORDER TO
SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED FOR LACK OF
PROPER "NEXT FRIEND" STANDING OR, IN THE ALTERNATIVE,
TO STAY PROCEEDINGS PENDING RELATED APPEALS**

Petitioners' memorandum in opposition to respondents' motion for order to show cause fails to rebut the central premise of respondents' motion – petitioners must establish that they have proper standing to sue before the Court can exercise jurisdiction over the above-captioned case, and petitioners have yet to do so here. The unnamed detainee who purports to seek habeas relief on behalf of detainee Khandan has not demonstrated that he possesses proper "next friend" standing to sue on behalf of Mr. Khandan under the two-pronged standard articulated by the Supreme Court in Whitmore v. Arkansas, 495 U.S. 149, 163-64 (1990). Petitioners concede that "Kadeer Khandan's petition was filed as a result of a letter sent in his behalf by a fellow detainee." Pets' Mem. at 4. Therefore, the petition was "signed" (though not "verified") by "someone acting in [Mr. Khandan's] behalf" pursuant to 28 U.S.C. § 2242. Accordingly, this unnamed "fellow detainee" must establish that he possesses proper next friend standing under Whitmore in order for the Court to exercise jurisdiction over this action.

Petitioners attempt to circumvent this critical requirement by implying that respondents' conduct somehow necessitated this jurisdictionally deficient petition, which should thereby compel the Court to ignore established precedent and excuse petitioners from the next friend standing requirements. Petitioners' position, however, lacks both factual and legal merit. Petitioners bear the burden of establishing why the above-captioned petition for writ of habeas corpus, not directly authorized by the particular detainee at Guantanamo Bay for whom habeas relief is sought, but instead brought by another unnamed detainee, should not be dismissed for lack of proper next friend standing. Absent proper standing to sue, this case should be dismissed for lack of jurisdiction.

Even if the above-captioned case is not dismissed, it nonetheless should be stayed pending resolution of all appeals in <u>Khalid v. Bush</u>, <u>Boumediene v. Bush</u>, Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), <u>appeals docketed</u>, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and <u>In re Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et al.</u>, 355 F. Supp. 2d 443 (D.D.C. 2005), <u>appeal on petition for interlocutory appeal</u>, No. 05-5064 (D.C. Cir. Mar. 10, 2005). The pending appeals will address the core issues in this case and, thus, determine how this case should proceed, if at all. Further proceedings, including the submission of factual returns, would require the expenditure of significant judicial and other resources that may be avoided as a result of the appeals, and, in any event, such proceedings very likely would have to be revisited or relitigated once the appeals are decided and the Court of Appeals provides guidance regarding handling of the claims in all of the Guantanamo detainee cases.

**ARGUMENT**

I.  **Petitioners Have Failed to Establish Proper "Next Friend" Standing in the Above-Captioned Case.**

The unnamed detainee who is seeking habeas relief on behalf of detainee Khandan bears the burden of establishing proper standing to sue as a prerequisite to the Court's exercise of jurisdiction over this petition.  See Elk Grove Unified School District v. Newdow, 124 S. Ct. 2301, 2308 (2004) ("In every federal case, the party bringing the suit must establish standing to prosecute the action."); Warth v. Seldin, 422 U.S. 490, 517-18 (1975) ("The rules of standing, whether as aspects of the Art. III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention.").  To establish standing in this "next friend" case, therefore, petitioners must demonstrate that (1) Mr. Khandan — the real party in interest — cannot challenge the legality of his detention himself; and (2) the purported "next friend" has a significant relationship with Mr. Khandan to show that he is truly dedicated to Mr. Khandan's best interests.  See Whitmore, 495 U.S. at 163-64.  Petitioners have yet to satisfy either requirement.

As explained in the declarations submitted in support of respondents' motion, respondents have provided every detainee with adequate means and opportunity to file a habeas petition in order to meaningfully challenge the lawfulness of his detention.  The Department of Defense ("DoD") has notified each of its detainees at Guantanamo Bay of his right to file a petition for habeas corpus ("You may ask a civilian judge to look at the lawfulness of your detention . . ."), and has provided each detainee with the address of the United States District

Court in the event that he desires to submit his own petition to the Court. See (Second) Declaration of Frank Sweigart, ¶¶ 3-5. Although petitioners would like the Court to believe that the detainees are being held "incommunicado," in fact, all detainees possess the opportunity to send and receive mail through the Military's mail delivery and collection system or through the International Committee for the Red Cross. See id., Ex. D. As a result, all detainees may write to friends, family members, or attorneys to request assistance with filing a habeas petition, if they so desire, or they may write and send a *pro se* petition to the Court themselves, as many detainees have. Petitioners have submitted no evidence that Mr. Khandan is unable to take advantage of these opportunities. Moreover, DoD has taken affirmative steps to facilitate legal representation for detainees who have indicated a desire to challenge the legality of their detention by providing them with a form to complete and mail to the American Bar Association ("ABA"), which has agreed to recruit volunteer counsel for detainees desiring representation. See (Second) Sweigart Declaration, ¶ 7. Petitioners cannot reasonably argue that the detainees at Guantanamo Bay are unable to seek habeas relief when scores of cases involving well over 200 detainees are pending before the Court,[1] including 55 *pro se* petitions that detainees mailed directly to the Court, and at least 18 petitions filed as a result of detainees initiating direct contact with counsel. See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition presumes, rather than demonstrates through facts, that Ahmed has been denied access to the courts of the United States. . . . In light of the fact that several pro se petitions have been filed

---

[1] There are presently 161 cases pending before the Court on behalf of approximately 293 petitioners, although this number includes detainees who filed multiple petitions. Respondents also have been unable to identify approximately two dozen of these petitioners as detainees at Guantanamo Bay.

recently by Guantanamo Bay detainees, Ahmed's lack of access to this court cannot be presumed, but must be established."); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16) ("[The petition] states only that [Hamlily] is 'being held essentially communicado' and that 'his family members have not been able to contact U.S. counsel to file a petition on his behalf.' . . . There is a serious question as to whether this alone is sufficient to establish Hamlily's inability to prosecute this action on his own behalf."). Based on this record, and absent any credible and specific evidence to the contrary, petitioners have yet to satisfy the first prong of the Whitmore test.[2]

The unnamed detainee who is the purported "next friend" in this case has also yet to demonstrate that he has a "significant relationship" with Mr. Khandan such that he is "truly

---

[2] Petitioners improperly blame respondents for their allegedly "selective and demonstrably incomplete factual submission" regarding the circumstances under which the detainee for whom habeas relief is sought was notified of his ability to seek habeas relief. Pets' Mem. at 2. Not only does this ignore that it is *petitioners'* burden to establish that Mr. Khandan is unable to challenge the legality of his detention so as to justify next friend standing in this case, see Whitmore, 495 U.S. at 154 ("[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue . . ."); id. at 163 ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another."), it disregards the fact that a large number of *pro se* and other petitions have been filed in response to the notices provided to detainees regarding their ability to contact the Court or others to pursue habeas relief. The fact that scores of cases involving well over 200 detainees are pending before the Court establishes that respondents have not confined the detainees in conditions that preclude them from vindicating their right to challenge the lawfulness of their detention and confirms that the detainees can effectively access the courts and counsel if they choose to do so. While respondents have not prohibited detainees from exercising their legal rights, respondents also do not have any obligation to actively prod these detainees to take advantage of their ability to file habeas petitions in U.S. courts. Some detainees simply may not want the U.S. courts to review the legality of their detention. See, e.g., Declaration of Tony F. De Alicante, filed on May 6, 2005 as Exhibit C to Reply in Support of Respondents' Motion to Dismiss Petition in John Does 1-570 v. Bush, No. 05-CV-0313 (CKK) (stating that as of May 5, 2005, four different detainees refused to accept legal mail from their attorneys, and several have stated that they do not want to be represented by counsel).

dedicated to [his] best interests." See Whitmore, 495 U.S. at 163-64.  Petitioners have not provided any evidence to show that the unnamed "fellow detainee" seeking "next friend" status has any sort of "significant relationship" with Mr. Khandan, the detainee on whose behalf he claims to seek habeas relief.[3]  Indeed, this unnamed detainee is not even certain of what languages Mr. Khandan speaks.  See Khandan Petition Exhibit at 2 ("Pashtu, Farsi (I am not sure of Farsi, but sure of Pashtu)").  The Court is left with no basis from which to conclude that this so-called "next friend" knows Mr. Khandan in any meaningful way so as to ensure that he will genuinely pursue Mr. Khandan's desires and interests, which is one of the primary motivations behind the next friend standing doctrine.  See Whitmore, 495 U.S. at 164 ("These limitations on the 'next friend' doctrine are driven by the recognition that it was not intended that the writ of habeas corpus should be availed of, as a matter of course, by intruders or uninvited meddlers, styling themselves next friends.") (internal quotations omitted).  Absent proof that evidences a significant relationship, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over this action.

---

[3] See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition does not provide basic personal facts about Ahmed, such as his citizenship, his age, whether he is married or has a family, the place of his arrest or capture, and the places of detention, if any, prior to his being transported to Guantanamo Bay.  The absence of such facts leaves the impression that Hassen does not know even this much about Ahmed and his situation."); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16) ("The Court notes the total lack of any basic facts about Hamlily in the petition or other filings in this case -- most notably, the absence of any details concerning Hamlily's individual conditions of confinement (in contrast to the detainee population at large), including interrogations of Hamlily, inadequacies in his diet or medical care, or restrictions on, or interference with, the practice of his religion.  This lack of necessary factual information suggests that Aamer does not have a 'significant relationship' with Hamlily.").

Thus, petitioners' suggestion that counsel should be allowed to visit Mr. Khandan in order to discover if he desires to pursue habeas relief, and thereby render respondents' motion for order to show cause moot, effectively puts the cart before the horse. Counsel cannot avail themselves of the counsel access procedures contained in the Protective Order until they first establish that proper jurisdiction over the case exists. Counsel elected to file this petition based on a letter sent on Mr. Khandan's behalf by a "fellow detainee," and are obligated to satisfy the requirements for next friend standing before any proceedings in this case can move forward.[4]

---

[4] Petitioners' argument that the Supreme Court has determined that Guantanamo detainees have a right to counsel, see Pets' Mem. at 2-3, is incorrect. The Supreme Court's decision in Rasul v. Bush, 124 S. Ct. 2686 (2004), dealt with the narrow question of whether the habeas statute, 28 U.S.C. § 2241, by its terms, "confer[red] on the District Court jurisdiction to hear petitioners' habeas corpus challenges," id. at 2698, and did not provide petitioners with a right to counsel or any other substantive right. Petitioners' reliance on a misleading clause quoted out of context from the closing passage of Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2651 (2004) (plurality), is also misplaced. The clause in question stated that Hamdi, an American citizen detained in the United States as an enemy combatant, "unquestionably has the right to access counsel in connection with the proceedings on remand." Id. While petitioners argue that this passage acknowledges that habeas petitioners have a right to an attorney, in context, it is clear that the Court *declined to consider the question*:

> Hamdi asks us to hold that the Fourth Circuit also erred by denying him immediate access to counsel upon his detention and by disposing of the case without permitting him to meet with an attorney. Brief for Petitioners 19. Since our grant of certiorari in this case, Hamdi has been appointed counsel, with whom he has met for consultation purposes on several occasions, and with whom he is now being granted unmonitored meetings. He unquestionably has the right to access to counsel in connection with the proceedings on remand. *No further consideration of this issue is necessary at this stage of the case.*

124 S. Ct. 2652 (emphasis added). As the full, quoted passage makes plain, in noting that Hamdi "unquestionably has the right to access to counsel," the Court was not drawing a legal conclusion concerning Hamdi's rights but merely observing that Hamdi had, in fact, now been granted counsel for purposes of future proceedings. Accordingly, it was not necessary for the Court to further consider the question of his right to counsel. Indeed, it would have been remarkable for the Court to have overturned the decision of the Fourth Circuit and identified a new right to counsel for habeas petitioners without any analysis or citation whatsoever. Petitioners' attempt

Jurisdiction must be established and this case must be properly before the Court before any proceedings may commence, including counsel visits to Guantanamo Bay.[5] Petitioners should not be excused from the requirements for next friend standing articulated by the Supreme Court in Whitmore. If petitioners are unable to demonstrate that this petition was brought by a legitimate next friend, jurisdiction over the petition is absent, and the petition must be dismissed.

## II. If the Court Does Not Dismiss this Case, It Should be Stayed Pending Resolution of the Appeals of Decisions in the Other Guantanamo Detainee Cases Adjudicating Common Issues.

If the Court finds that the petition in the above-captioned case was filed by a legitimate next friend,[6] the Court should stay proceedings in this case pending the resolution of the appeals

---

to argue otherwise is plainly mistaken. In any event, any analysis of the rights of Hamdi, a U.S. citizen, cannot be generalized to apply to an alien held outside U.S. sovereign territory. Further, in Al Odah v United States, 346 F. Supp. 2d 1 (D.D.C. 2004), Judge Kollar-Kotelly explained that, despite there being no absolute right to counsel under the habeas statute, the Court, under its discretionary authority, may appoint counsel to represent Guantanamo petitioners properly before the Court, if warranted. See id. at 4-5, 7-8. None of the cases cited by petitioners, nor respondents' delivery of the ABA Notification or other attempts to facilitate counsel access to properly represented detainees, imposes an obligation on respondents, or the Court, to automatically assign counsel to every detainee at Guantanamo Bay regardless of a detainee's desire to pursue legal recourse in court.

[5] Even the Protective Order and counsel access procedures typically made applicable in Guantanamo detainee habeas cases provides that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee." See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, 344 F. Supp. 174, 185 (Ex. A) § III.C.1. (D.D.C. 2004). Counsel has yet to provide sufficient evidence of his "authority to represent" Mr. Khandan, i.e., to demonstrate the satisfaction of the requirements of next friend standing in this matter. The Protective Order thus contemplates counsel visits only in cases properly before the Court.

[6] Even if the Court finds that petitioners have established next friend standing so that the Court can exercise jurisdiction over the petition, the next friend should not be permitted to serve in this capacity beyond the time when counsel are permitted to meet with Mr. Khandan, the detainee for whom habeas relief is sought. See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re

in Khalid, Boumediene and In re Guantanamo Detainee Cases, which will determine whether and how this case should proceed. The petition in this case raises legal issues that were squarely addressed by the opinions in In re Guantanamo Detainee Cases, Khalid, and Boumediene and that are raised in the appeals, including: (1) whether the petitioners have stated valid claims under the Fifth Amendment to the United States Constitution and, if so, whether the procedures implemented by respondents to determine the status of petitioners violate their Fifth Amendment rights; (2) whether the petitioners have stated valid claims under the Third Geneva Convention;[7] and (3) whether the petitioners have stated valid claims based on various other legal theories, including other Constitutional provisions, other international treaties, Military regulations, the Administrative Procedure Act, the Alien Tort Statute, and customary international law. It makes no sense for proceedings related to the merits of this case to go forward when decisions from the D.C. Circuit on the related Guantanamo detainee appeals will determine the legal analyses applicable to this case and, indeed, whether and how this case should proceed.

In seeking a stay to the extent the next friend petitioner is determined to satisfy the applicable requirements, however, it makes no sense for the government to process and submit a

---

Guantanamo Detainee Cases, 344 F. Supp. 174, 185 (Ex. A) § III.C.2. (D.D.C. 2004) (permitting counsel in proper next-friend cases two visits with a detainee before an authorization of representation by the detainee must be provided to respondents). At that time, counsel should determine Mr. Khandan's wishes concerning pursuing a challenge to his detention through the habeas petition in this case, such that the case can then either be converted into a direct petition or be dismissed.

[7] In Hamdan v. Rumsfeld, 415 F.3d 33, 40 (D.C. Cir. 2005), the D.C. Circuit held that the Third Geneva Convention does not give rise to claims enforceable in court.

factual return[8] with respect to Mr. Khandan when the D.C. Circuit will be considering the proper scope of these habeas proceedings, including whether the claims can be dismissed without reference to specific factual returns. See Khalid, 355 F. Supp. 2d 311 (dismissing petitioners' claims in their entirety). Even if counsel had access to a factual return, they would not be able to share classified information in the return with petitioners. See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 8, 2004), ¶ 30. Thus, there is no reason why counsel need access to a factual return at this time.[9]

Moreover, the submission of factual returns which, in any event, may ultimately be unnecessary, burdens the government's resources and risks the inadvertent disclosure of classified information. Each factual return must be obtained from the Department of Defense, and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations and Executive Orders. Respondents must then prepare both public and classified versions of the factual returns for submission to the Court and counsel. Each return can range from dozens to hundreds of pages, depending upon the circumstances. Thus, respondents face an

---

[8] A factual return for a petitioner in a Guantanamo detainee case typically has consisted of the record of proceedings before the Combatant Status Review Tribunal that confirmed petitioner's status as an enemy combatant properly subject to detention. The factual return is separate from briefing on legal issues in the cases. Factual returns include both classified and unclassified material.

[9] In this vein, various Judges of this Court have declined to require factual returns during the pendency of the stay. See, e.g., Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 5); Imran v. Bush, No. 05-CV-0764 (CKK) (dkt. no. 6); Attash v. Bush, No. 05-CV-1592 (RCL) (dkt. no. 12).

immense logistical burden to process and file the returns, especially on the short, simultaneous schedules being requested by petitioners in the various cases.  Further, submission of these returns vastly expands access to classified information contained in the returns, thereby increasing the risks of inadvertent or other disclosure or compromise of the information.  These burdens and risks, however, could be rendered completely unnecessary, depending on the outcome of the appeals.  Cf. Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 482 (staying cases so as to avoid expenditure of "substantial resources" and imposition of "significant burdens" that might not be necessary depending on outcome of appeal).

Although certain Judges of this Court have ordered respondents to submit factual returns in cases that are otherwise stayed, respondents oppose the submission of a factual return in this case for the reasons stated herein.  If the petition is not dismissed for lack of proper next friend standing and submission of factual returns were to go forward at all, it could only be done pursuant to a coordinated and reasonable schedule, taking account of the fact that petitioners in all the recently filed cases are seeking factual returns and recognizing the logistical burdens posed by an undertaking to produce returns in the cases.  In such circumstances, a schedule for the rolling production of factual returns in this case (and potentially other cases) over the next 10 to 12 weeks would be appropriate.  In a number of other recent cases, including in this Court, the government has been given between 90 and 120 days to file factual returns, and respondents request that the Court impose a similar schedule, if the Court determines that this case is properly filed and that a factual return should be provided.  See e.g., Battayav, No. 05-CV-0714 (RBW) (dkt. no. 12) (imposing 120-day schedule); Al-Joudi, No. 05-CV-0301 (GK) (dkt. no. 26)

(imposing 90-day schedule); Al-Wazan, No. 05-CV-0329 (PLF) (dkt. no. 37) (imposing 90-day schedule); Al-Anazi, No. 05-CV-0345 (JDB) (dkt. no. 21) (imposing 120-day schedule); Ameziane, No. 05-CV-392 (ESH) (dkt. no. 12) (imposing 90-day schedule); Qayed, No. 05-CV-0454 (RMU) (dkt. no. 5) (imposing 90-day schedule).

## CONCLUSION

For the reasons stated, petitioners have not demonstrated proper next friend standing. Even if petitioners are able to establish proper standing, the Court should stay further proceedings in this case, except as noted above, pending resolution of the appeals of Judge Leon's decision in Khalid and Boumediene and Judge Green's January 31, 2005 decision in In re Guantanamo Detainee Cases.

Dated: October 21, 2005                    Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General

                                           KENNETH L. WAINSTEIN
                                           United States Attorney

                                           DOUGLAS N. LETTER
                                           Terrorism Litigation Counsel

                                             /s/ Preeya M. Noronha
                                           JOSEPH H. HUNT (D.C. Bar No. 431134)
                                           VINCENT M. GARVEY (D.C. Bar No. 127191)
                                           TERRY M. HENRY
                                           JAMES J. SCHWARTZ
                                           PREEYA M. NORONHA
                                           ROBERT J. KATERBERG
                                           NICHOLAS J. PATTERSON
                                           ANDREW I. WARDEN
                                           EDWARD H. WHITE
                                           Attorneys
                                           United States Department of Justice

Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7144
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents